IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHARON LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CV3084 |
| | ) | |
| v. | ) | |
| | ) | |
| KIMBALL, CITY OF, GREG ROBINSON, | ) | MEMORANDUM AND ORDER ON |
| EVERSTON OIL COMPANY, | ) | DEFENDANTS' MOTIONS TO DISMISS |
| CASTONICS, BRUCE EVERTSON, | ) | |
| FORWARD KIMBALL INDUSTRIES, | ) | |
| DAVE WOLF, PERFORMAX BUILDING | ) | |
| MATERIALS, PERRY VAN NEWKIRK, | ) | |
| and MARY LOU DIAZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On April 7, 2006, the plaintiff, Sharon Lewis, filed a complaint against the City of Kimball (Kimball); Greg Robinson, both individually and in his official capacity as the Mayor of Kimball; Everston Oil Company, Inc. (Everston Oil); Castonics, Inc. (Castonics); Bruce Evertson; Forward Kimball Industries, Inc. (Forward Kimball); Dave Wolf; Performax Building Materials, Inc. (Performax); Perry Van Newkirk; and Mary Lou Diaz, alleging violations of 42 U.S.C. § 1983, 8 U.S.C. § 1373, 42 U.S.C. § 1985, and state law claims for defamation and intentional interference with contract rights. (See generally Compl., filing 1.) Defendants Kimball, Robinson, Forward Kimball, Wolf, Everston Oil, Bruce Evertson, Castonics, Van Newkirk, and Diaz have filed motions to dismiss the plaintiff's claims, (see filings 41, 45, 48, 50, 70), and Defendant Performax has joined in several of these motions, (see filings 54, 55.) For the following reasons, I find that the defendants' motions must be granted in part.

I. BACKGROUND

The complaint contains the following allegations, which must be taken as true for the purposes of this memorandum. See Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

1

### A. The Parties

The plaintiff was employed by Kimball as a police officer until November 16, 2005, when her employment was terminated. (See Compl., filing 1, ¶¶ 15, 31.) Prior to her termination, the plaintiff "assisted INS in investigations related to immigration violations." (Id. ¶ 26.)

Kimball is a political subdivision of the State of Nebraska, (see id. ¶ 5), and at all relevant times, Greg Robinson served as the Mayor of Kimball and acted as an "official policy maker" for the city, (id. ¶ 10). Dave Wolf is president and director of Forward Kimball, which is a Nebraska corporation. (See id. ¶¶ 8, 14.) Bruce Evertson is the president of Everston Oil,[1] a Utah corporation "licensed to do business in Nebraska." (Id. ¶¶ 6, 11.) Perry Van Newkirk is the president of Castonics,[2] a Nebraska corporation. (See id. ¶¶ 7, 12.) Performax is a Colorado corporation licensed to do business in Nebraska. (See id. ¶ 9.) Mary Lou Diaz is "an agent or employee" of Performax and "is also a full time Postal employee." (Id. ¶ 13.)

### B. Factual and Procedural Background

On or about July 14, 2005, the plaintiff was called by police dispatch and told to report to City Hall. (See Compl., filing 1, ¶ 16.) After she arrived at City Hall, the plaintiff participated in a meeting with Mayor Robinson, Police Chief Shank, City Administrator Goodell, and City Attorney Huenergardt. (See id. ¶ 17.) During this meeting, the plaintiff was informed that she had been accused of engaging in racial discrimination against Hispanics. (See id. ¶ 18.) More specifically, she was told that certain business owners reported that their Hispanic workers were complaining about the plaintiff "following them, sitting outside their homes, and arresting them without cause." (See id. ¶ 20.) The plaintiff was also told that on the previous day, Huenergardt, Goodell, Defendant Robinson, and certain county commissioners met with Defendants Wolf, Evertson, and Diaz to "discuss[] that the workforce for the corporate defendants is largely

---

[1] I note that the motion and briefs filed by Bruce Evertson and Everston Oil suggest that the names of both defendants are spelled "Evertson." (See filings 48, 49, 63.) Nevertheless, in this memorandum I shall use the spellings that appear in the caption of the complaint.

[2] "Castonics" is alternately spelled "Castronics" in various filings. (See, e.g., filing 1, ¶ 7; filing 50.) Again, here I shall use the spelling that appears in the caption of the complaint.

2

Hispanic, that the businesses rely heavily on the Hispanics, and that the Hispanics needed to feel comfortable to continue working in the area." (See id. ¶¶ 22-23.) The plaintiff was placed on paid administrative leave, and she was informed that "this was not a disciplinary action." (See id. ¶ 24.) Indeed, "The attendees of the meeting told Plaintiff that they knew she did not do anything wrong." (Id. ¶ 25.)

Later that day, the plaintiff received a call from a Mr. Gil Johnson. (See Compl., filing 1, ¶ 26.) Johnson informed the plaintiff "that Chief Shank was taking heat from local businesses for recent deportations," and that "the reason she is being investigated is because INS sent out letters to employers the previous week." (Id.) The plaintiff does not allege specifically that these letters were connected with investigations that she undertook on behalf of the INS; however, she does allege that "[m]any of Performax['s] . . . and other corporate defendants' . . . employees were illegal immigrants that were deported due to investigations by Plaintiff and other police officers," and that "[t]hese companies complained to city officials because of the difficulties this caused to their operations." (Id. ¶ 27.) She also alleges that Defendant Robinson "has two brothers-in-law who work as supervisors at Performax." (Id. ¶ 28.)

On November 16, 2005, the plaintiff's employment with the City of Kimball was terminated. (See Compl., filing 1, ¶ 31.) The plaintiff did not receive written notice of, "nor any substantial reason" for, her termination. (Id. ¶ 30.) Instead, she was told by Robinson that the decision to terminate her "was based on an investigator's recommendation" and that the city "did not have to give a reason for her termination." (Id. ¶ 28.)

On April 7, 2006, the plaintiff filed a five-count complaint against the defendants. (See generally Compl., filing 1.) Count I alleges that the plaintiff had a property interest in her employment and that she was deprived of that interest, in violation of the Fourteenth Amendment, by Defendants Kimball and Robinson. (See id. ¶¶ 33-36.) It also alleges that the plaintiff "had a liberty interest in her good name, which was all but destroyed by [Defendants Kimball and Robinson's] actions," and that Kimball and Robinson violated the plaintiff's First Amendment rights. (Id. ¶¶ 37-39.) Count II alleges that all of the defendants acted "to suspend and terminate the Plaintiff" in violation of 8 U.S.C. § 1373. (Id. ¶ 44.) Count III alleges that all of the defendants conspired to prevent the plaintiff from performing her duties and to deprive her

3

of her constitutional rights, in violation of 42 U.S.C. § 1985. (Id. ¶ 46.) Count IV alleges that "all corporate and individual defendants" published false statements about the plaintiff and thereby damaged her "occupation and reputation." (See id. ¶¶ 51-53.) Count V alleges that Defendants Everston Oil, Castonics, Forward Kimball, Robinson, Bruce Evertson, Van Newkirk, Diaz, and Wolf "intentionally and unjustifiably interfered with Plaintiff's contractual rights in that they conspired together to induce the City of Kimball to terminate Plaintiff's employment." (Id. ¶ 56.)

On June 1, 2006, Defendants Kimball, Robinson, Forward Kimball, and Wolf filed motions to dismiss several of the plaintiff's claims. (See filings 41, 45.) Thereafter, Performax joined in these motions in part. (See filing 54.) On June 5, 2006, Defendants Everston Oil, Bruce Evertson, Castonics, and Van Newkirk filed motions to dismiss the complaint, (see filings 48, 50), and Performax joined in those motions as well, (see filing 55). On July 17, 2006, Defendant Diaz filed a motion to dismiss the complaint. (See filing 70.) All of the defendants' motions are brought pursuant to Federal Rule of Civil Procedure 12(b)(6). My analysis of the motions follows.

## II. STANDARD OF REVIEW

"[A] motion to dismiss a complaint [pursuant to Rule 12(b)(6)] should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In resolving such motions, all well-pleaded allegations in the complaint must be taken as true, and the complaint and "all reasonable inferences arising therefrom" must be construed in favor of the plaintiff. Morton, 793 F.2d at 187.

## III. ANALYSIS

I shall consider each count of the complaint in turn and determine whether it fails to state a claim against any of the movants.

4

## A. Count I

Count I, which is brought pursuant to 42 U.S.C. § 1983, alleges that Kimball and Robinson terminated the plaintiff's employment in violation of the First and Fourteenth Amendments. (See Compl., filing 1, ¶ 33-41.) Robinson does not argue that the complaint fails to state a claim against him; therefore, Count I remains viable against Robinson individually.[3] (See filing 43 at 3-4.) However, Kimball argues that Count I fails to state a claim against it because there are no allegations that the constitutional violations resulted from the execution of an official "policy or custom." (See id. at 4-5.)

It is true that a governmental entity cannot be held liable under § 1983 on a theory of respondeat superior. Springdale Educational Assoc. v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998). "Rather, a plaintiff seeking to impose such liability is required to identify either an official municipal policy or a widespread custom or practice that caused the plaintiff's injury." Id.

> The identification of an official policy as a basis upon which to impose liability ensures that a municipality is held liable only for constitutional deprivations "resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Similarly, actions performed pursuant to a municipal "custom" not formally approved by an authorized decisionmaker "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."

Id. (quoting Board of County Commissioners of Bryan County, Okl. v. Brown, 520 U.S. 397, 403-04 (1997)) (citations omitted).

A plaintiff "need not . . . specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d

---

[3]Robinson is sued in both his individual and official capacities; however, "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. (citation omitted). In other words, each of the plaintiff's claims against Robinson in his official capacity is bound to the same fate as each claim against Kimball.

588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. School Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)). The complaint may be deemed sufficient if it includes "allegations, reference[s], or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." Id. (quoting Doe, 340 F.3d at 614).

It seems to me that the complaint includes "allegations . . . by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." Id. The plaintiff has alleged that she has a property interest in her employment with Kimball, (see Compl., filing 1, ¶ 34), and that since Kimball is a "city of the second class" under Nebraska law, (see id. ¶ 5 (citing Neb. Rev. Stat. § 17-301)), it is required to adopt by ordinance "rules and regulations governing the removal or discipline of any police officer," (see id. ¶ 35 (quoting Neb. Rev. Stat. § 17-107(2))). According to the statute cited by the plaintiff,

> The ordinance [governing the removal or discipline of police officers] shall include a procedure for making application for an appeal, specifications on the period of time within which such application shall be made, and provisions on the manner in which the appeals hearing shall be conducted. Both the police officer and the individual imposing the disciplinary action shall have the right at the hearing to be heard and to present evidence to the city council for its consideration. Not later than thirty days following the adjournment of the meeting at which the hearing was held, the city council shall vote to uphold, reverse, or modify the removal or disciplinary action. The failure of the city council to act within thirty days or the failure of a majority of the elected council members to vote to reverse or modify the removal or disciplinary action shall be construed as a vote to uphold the removal or disciplinary action. The decision of the city council shall be based upon its determination that, under the facts and evidence presented at the hearing, the challenged removal or disciplinary action was necessary for the proper management and the effective operation of the police department in the performance of its duties under the statutes of the State of Nebraska.

Neb. Rev. Stat. § 17-107(2). The plaintiff alleges that, contrary to the terms of section 17-107(2), Kimball did not provide her with notice or a hearing or state a reason for her termination. (See Compl., filing 1, ¶ 36.) She also alleges that it is her belief that Kimball has not adopted the ordinance described in section 17-107(2). (See id.)

Although the plaintiff did not specifically allege that the application of an official policy or a widespread custom or practice caused her constitutional injuries, the foregoing allegations

6

can, when construed in the plaintiff's favor, support an inference that it was Kimball's policy or custom to terminate police officers without notice or a hearing, despite their property interests in their employment, in violation of their due process rights.[4]  Therefore, the plaintiff's Fourteenth Amendment due process claim against Kimball shall not be dismissed.

In addition, I note that the plaintiff has alleged that Robinson was the "official policy maker in the [C]ity of Kimball." (Compl., filing 1, ¶ 10.)  Under some circumstances, the acts of "policymakers" can result in municipal liability.  See Springdale Educational Assoc. v. Springdale School Dist., 133 F.3d 649, 652 (8th Cir. 1998) (quoting McGautha v. Jackson County, Mo., Collections Dep't, 36 F.3d 53, 56 (8th Cir. 1994)).  Kimball's brief does not address this point.  As a result, I cannot say that the plaintiff can prove no set of facts that would entitle her to relief under § 1983.  The plaintiff's First and Fourteenth Amendment claims remain viable, and Robinson's and Kimball's motion to dismiss Count I of the complaint must be denied.

### B.  Count II

In Count II of her complaint, the plaintiff alleges that each defendant "violated 8 U.S.C. § 1373 by acting to suspend and terminate the Plaintiff in violation of Federal law." (Compl., filing 1, ¶ 44.)  In pertinent part, § 1373 states,

(a) In general

Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

(b) Additional authority of Government entities

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the

---

[4]I note in passing that the process due depends upon constitutional principles, not the requirements of section 17-107(2).  See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538-41 (1985).

immigration status, lawful or unlawful, of any individual:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.
(2) Maintaining such information.
(3) Exchanging such information with any other Federal, State, or local government entity.

The defendants argue that Count II must be dismissed for two main reasons: First, there is no allegation that any defendant prohibited or restricted the plaintiff from maintaining or exchanging relevant information. Second, even if the defendants' actions violated § 1373, the statute provides the plaintiff with no remedy. (See filing 43 at 6-7; filing 46 at 3-5; filing 49 at 6-9; filing 51 at 3-4; filing 69 at 2-3.) I agree with the defendants' second argument, and I find that Count II must be dismissed in its entirety.

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. University of Chicago, 441 U.S. 677, 688 (1979). If a statute does not expressly authorize a private right of action by such a person, courts have traditionally considered four factors to determine whether a private remedy is implicit in the statute:

"First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'–that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

Id. at 688 n.9 (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)) (citations omitted). However, each of these four factors is not entitled to equal weight. See Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979).[5] "The central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action." Id.

Section 1373 does not expressly authorize a private right of action. It does not grant

---

[5]Indeed, the Eighth Circuit has commented that the "continued validity" of the four-factor analysis is "questionable." Roberts v. Wamser, 883 F.2d 617, 623 n.17 (8th Cir. 1989).

8

private rights to any identifiable class or proscribe conduct as unlawful, and there is no indication that the legislative history includes any mention of an intent to create a private remedy. Under these circumstances, "[t]he question whether Congress, either expressly or by implication, intended to create a private right of action, has been definitely answered in the negative." Touche Ross & Co., 422 U.S. at 576. See also id. at 569 (citing cases). In other words, even if it is consistent with the underlying purpose of § 1373 to imply a private remedy in this case, and even if the enforcement of § 1373 is a matter of federal concern, those considerations would not outweigh the fact that there is absolutely no reason to conclude that Congress intended to create a private cause of action for violations of § 1373. See Touche Ross & Co., 422 U.S. at 575. I also note, parenthetically, that the plaintiff has not argued that any of the four Cort factors favor a finding that a private remedy is implicit in § 1373. (See filing 61 at 4-5.) I find that Count II of the plaintiff's complaint fails to state a claim, and the defendants' motions to dismiss this count will be granted.

### C. Count III

Count III is based mainly upon the following allegation:

> Defendants, in association with one another, agreed to [p]revent[] [an] officer from performing duties and/or deprive Plaintiff of her constitutional rights . . . which is an unlawful objective, by rallying to terminate Plaintiff's employment. In furtherance of this agreement, Defendants performed acts of defamation against plaintiff. This conspiracy is a violation of 42 U.S.C. § 1985(1) and/or (3).

(See Compl., filing 1, ¶ 46.) The defendants argue that Count III must be dismissed because the complaint fails to state a claim under § 1985. (See filing 43 at 7-13; filing 46 at 6; filing 49 at 9-13; filing 51 at 4-5.) Although I agree that the complaint does not state a claim under § 1985, I am not persuaded that Count III must be dismissed.

Section 1985 proscribes five categories of conspiracies. See Kush v. Rutledge, 460 U.S. 719, 724-25 (1983). Generally, § 1985(1) proscribes conspiracies that interfere with the "performance of official duties by federal officers"; the first portion of § 1985(2) proscribes conspiracies that interfere with "the administration of justice in federal courts"; the second portion of § 1985(2) proscribes conspiracies that obstruct "the administration of justice in state courts"; the first portion of § 1985(3) proscribes conspiracies that interfere with "the private

9

enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'"; and the second portion of § 1985(3) proscribes conspiracies that interfere with "the right to support candidates in federal elections." Id. at 724-25. "The civil remedy for a violation of any of the subsections is found at the end of § 1985(3)." Id. at 724.

Count III does not relate to "the performance of official duties by federal officers," "the administration of justice in the federal courts," or "the right to support candidates in federal elections." Kush, 460 U.S. at 724. Therefore, I find that Count III does not state a claim under § 1985(1), the first part of § 1985(2), or the second portion of § 1985(3).

The second part of § 1985(2) and the first part of § 1985(3) "each . . . contain[] language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." Kush, 460 U.S. at 725. "[This] language . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 726 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). See also Federer v. Gephardt, 363 F.3d 754, 757-58 & n.3 (8th Cir. 2004) ("A claim under [the first part of § 1985(3)] also requires proof of a class-based animus."); Coleman v. Garber, 800 F.2d 188, 191 (8th Cir. 1986) ("[Plaintiffs] fail to state a cause of action under the second part of section 1985(2) because they fail to allege that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"). Since the complaint does not allege that the conspirators were motivated by a class-based animus, Count III fails to state a claim under the second part of § 1985(2) or the first part of § 1985(3). Thus, it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief under § 1985.

However, in response to the defendants' motions, the plaintiff argues that the cause of action set forth in Count III can proceed under § 1983 instead of § 1985. (See filing 61 at 9-11.) The plaintiff's argument has merit. "[A] private actor may be liable under § 1983 when the private actor 'is a willful participant in joint activity with the State or its agents' in denying a plaintiff's constitutional rights." Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970)). See also id. at 951 ("[I]t is clear that a private entity acts under color of state law when engaged with state officials in a

conspiracy to deprive a person of federal constitutional rights. . . . [B]oth state officials and private actors may be liable under § 1983 . . . if the evidence shows the requisite agreement to violate or disregard the law."). In reply, the defendants argue that the plaintiff's complaint fails to state a claim under the Adickes "joint action" theory because her allegations are "conclusory" and, "at best," state simply that the defendants conspired to defame her in violation of state law. (See filing 49 at 11-13; filing 63 at 3-4.) I disagree.

"Under § 1983, a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." Dossett, 399 F.3d at 951. "[A]llegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).

> [T]he factual basis need not be extensive, but it must be enough to avoid a finding that the suit is frivolous. . . . [A plaintiff] must at least allege that "the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding," and provide some facts "suggesting such a 'meeting of the minds.'"

Id. (quoting Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983)).

As the defendants correctly note, the complaint alleges that the defendants acted in furtherance of a conspiracy by defaming the plaintiff. (See Compl., filing 1, ¶ 46.) This, it seems to me, does not amount to an allegation that the defendants "directed themselves toward an unconstitutional action." Deck, 771 F.2d at 1170 (quoting Smith, 699 F.2d at 436) (emphasis added). However, the plaintiff also alleges that the defendants "agreed" to deprive her of her constitutional rights as specified earlier in her complaint, (Compl., filing 1, ¶ 46), and in Count I of the complaint, the plaintiff alleges that she was terminated in violation of the First and Fourteenth Amendments, (see id. ¶¶ 33-41). As I have explained above, Count I remains viable. (See supra Part III.A.) Therefore, I cannot accept the defendants' suggestion that the plaintiff has pleaded nothing more than a conspiracy to defame her.

In addition, the plaintiff alleges that "[a]ll defendants had a mutual understanding of the unlawful objective and of the means of accomplishing such objective." (Compl., filing 1, ¶ 47.)

11

This allegation is accompanied by facts suggesting that a "meeting of the minds" occurred. Specifically, the plaintiff alleges that the plaintiff and other officers conducted investigations that led to deportations, (see id. ¶ 27); that the corporate defendants "complained to city officials because of the difficulties [that the deportations] caused to their operations," (id.);[6] that defendants Robinson, Wolf, Evertson, and Diaz met to discuss the interests of the corporate defendants' Hispanic workforces, (see id. ¶ 23); that, on the following day, the plaintiff was placed on paid administrative leave, (see id. ¶ 24); and that the plaintiff was ultimately terminated, (see id. ¶ 30). I find that the plaintiff's allegations of a conspiracy are "pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).

In sum, I conclude that the plaintiff has failed to state a claim under 42 U.S.C. § 1985; however, because Count III alleges a "joint activity" conspiracy under § 1983, it will not be dismissed. See Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974) ("[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.").

### D.     Count IV

Count IV, which is directed against "[a]ll corporate and individual defendants,"[7] alleges that the defendants "published, either by writing or by spoken word, false statements about Plaintiff." (See Compl., filing 1, ¶ 51.) Defendants Everston Oil, Bruce Evertson, Castonics, Van Newkirk, Performax, and Diaz[8] argue that Count IV must be dismissed because it contains no allegations that the defendants' statements were made with "actual malice." (See filing 49 at 13-16; filing 51 at 5-7; filing 69 at 4.) I agree.

The First Amendment "prohibits a public official from recovering damages for a

---

[6]The parties do not dispute that the "city officials" are "state actors" for the purposes of § 1983. See Gentry v. City of Lee's Summit, Mo., 10 F.3d 1340, 1342-43 (8th Cir. 1993).

[7]I take it that Count IV excludes the City of Kimball; also, the plaintiff has stated specifically that Robinson is excluded from Count IV. (See filing 61 at 14.)

[8]Forward Kimball and Wolf have not moved to dismiss Count IV.

defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'–that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). Thus, if the plaintiff is a "public official" and the allegedly defamatory statements relate to her official conduct, she must "allege facts from which a jury could find that the speaker acted with actual malice in making the defamatory statement." Michaelis v. CBS, Inc., 119 F.3d 697, 700 (8th Cir. 1997).

The determination of the plaintiff's status as a "public official" is a question of federal law. Michaelis, 119 F.3d at 702. See also Rosenblatt v. Baer, 383 U.S. 75, 84 (1966).

> The Supreme Court has not determined how far down the ranks of government employees public officials may be found, but has stated that public official status cannot extend to all public employees. At the very least, however, public official status applies to "those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."

Michaelis, 119 F.3d at 702 (quoting Rosenblatt, 383 U.S. at 85) (citations omitted). "Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, . . . the New York Times malice standards apply." Rosenblatt, 383 U.S. at 86.

Law enforcement officers of all levels of seniority are usually held to be "public officials" or "public figures" for the purposes of defamation suits. See Danny R. Veilleux, Annotation, Who Is "Public Official" for Purposes of Defamation Action, 44 A.L.R. 5th 193, §§ 2(a), 21(a) (1996). The Tenth Circuit has explained the reasoning underlying these holdings quite clearly:

> Street level policemen, as well as high ranking officers, qualify as public officials under the test of [Rosenblatt]. They "have or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs, and their position "has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees . . . ." The cop on the beat is the member of the department who is most visible to the public. He possesses both the authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily

> injury and financial loss. The strong public interest in ensuring open discussion
> and criticism of his qualifications and job performance warrant the conclusion that
> he is a public official.

Gray v. Udevitz, 656 F.2d 588, 591 (10th Cir. 1981) (quoting Rosenblatt, 383 U.S. at 85-86) (citations omitted). Relatively recently, the Eighth Circuit held that a probationary police officer is a "public figure" for the purposes of a defamation claim. Mercer v. City of Cedar Rapids, 308 F.3d 840, 848 (8th Cir. 2002). See also Campbell v. Citizens for an Honest Government, Inc., 255 F.3d 560, 567 (8th Cir. 2001) (citing cases). In view of these authorities, I find that the plaintiff is a "public official" within the meaning of New York Times Co. v. Sullivan.

Since the plaintiff is a "public official," and since it is apparent that the allegedly defamatory statements made by the defendants concerned the plaintiff's official conduct as a member of the Kimball police force, the plaintiff must allege facts from which a jury could find that the defendants acted "with knowledge that [their statements were] false or with reckless disregard of whether [they were] false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); see also Michaelis v. CBS, Inc., 119 F.3d 697, 700 (8th Cir. 1997). No such facts are alleged in the complaint. Therefore, I find that the plaintiff's defamation claim against Everston Oil, Bruce Evertson, Castonics, Van Newkirk, Performax, and Diaz must be dismissed pursuant to Rule 12(b)(6).

### E. Count V

Count V is directed toward all of the defendants except Kimball, Robinson, and Performax. (See Compl., filing 1, at 11; filing 61 at 15 (stating that Robinson should not be included in Count V).) It alleges that the defendants "intentionally and unjustifiably interfered" with the plaintiff's employment contract with Kimball by "conspir[ing] together to induce the City of Kimball to terminate Plaintiff's employment." (Compl., filing 1, ¶ 56.) Defendants Everston Oil, Bruce Evertson, Castonics, Van Newkirk, and Diaz[9] argue that Count V must be dismissed because the plaintiff has not alleged: 1) "any way in which [the defendants] engaged in any conspiracy,"(see filing 69 at 5; see also filing 51 at 7; filing 49 at 16); 2) the existence of an employment relationship between the defendants and the plaintiff; or 3) facts indicating that any

---

[9]Forward Kimball and Wolf have not moved to dismiss Count V.

defendant was in a "position to influence or otherwise be involved in decision-making relating to employment opportunities with the City of Kimball," (see filing 69 at 5; filing 51 at 7). I am not persuaded.

Under Nebraska law, there are five elements to a claim of tortious interference with a business relationship or expectation:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

Huff v. Swartz, 606 N.W.2d 461, 466 (Neb. 2000) (quoting Koster v. P & P Enterprises, Inc., 539 N.W.2d 274, 278-79 (Neb. 1995)); see also Home Pest and Termite Control, Inc. v. Dow Agrosciences, LLC, No. 8:02cv406, 2004 WL 240556, at *6 (D. Neb. 2004) (quoting Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig, 526 N.W.2d 33, 39 (Neb. 1995)). It seems to me that the plaintiff has alleged facts that, when taken together with all reasonable inferences arising therefrom, could support a finding that each of these elements has been satisfied. First, the plaintiff alleges that she had an employment contract with the City of Kimball. (See Compl., filing 1, ¶ 55.)[10] Second, she alleges facts that tend to support an inference that the defendants knew of her employment with the City of Kimball. (See id. ¶¶ 18, 20, 22, 26, 27, 28, 46, 47, 56.) Third, she alleges that the defendants "intentionally and unjustifiably interfered with Plaintiff's contractual rights in that they conspired together to induce the City of Kimball to terminate Plaintiff's employment." (Id. ¶ 56.) More specifically, one can reasonably infer from the plaintiff's allegations that the defendants were unhappy with the plaintiff's work on behalf of the INS, and that they sought to persuade city officials that it would be better for their businesses, and for the Hispanic population, if the plaintiff were terminated. (See id. ¶¶ 18-23, 25-27.) Finally, the plaintiff alleges that the defendants' interference with her employment contract caused her employer to place her on involuntary leave and, ultimately, to terminate her, which

---

[10]Parenthetically, I note that the defendants have cited no authority in support of their argument that the plaintiff is required to allege that she had an employment relationship with the defendants.

15

caused her to suffer damages. (See, e.g., id. ¶¶ 57-58). In view of these allegations, I am not convinced that the plaintiff can prove no set of facts that would entitle her to relief, and I cannot conclude that Count V fails to state a claim upon which relief may be granted.

An additional point raised by Defendants Everston Oil and Bruce Evertson merits attention. These defendants suggest that Count V may be nothing more than a restatement of Count IV, and that the plaintiff should not be allowed to circumvent the "actual malice" requirement discussed above, (see supra Part III.D), through the use of creative pleading. (See filing 49 at 16-17; filing 63 at 7-15.) In other words, the defendants argue that the "unjustified intentional act of interference" in this case is simply defamation, and therefore Count V cannot proceed absent allegations of actual malice.

The defendants' argument is not without force. The Supreme Court has held that in order "to give adequate 'breathing space' to the freedoms protected by the First Amendment," "public officials may not recover for the tort of intentional infliction of emotional distress . . . without showing . . . that the publication contains a false statement of fact which was made with 'actual malice.'" Hustler Magazine v. Fallwell, 485 U.S. 46, 56 (1988). The defendants' argument may well be a reasonable extension of the holding in Fallwell. I note too that in a case involving a "labor dispute," the Eighth Circuit held that "the malice standard required for actionable defamation claims . . . must equally be met for a tortious interference claim based upon the same conduct or statements," because "a plaintiff may not avoid the protection afforded by the Constitution and federal labor law merely by the use of creative pleading." Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, 39 F.3d 191, 196 (8th Cir. 1994).[11]

---

[11]State tort claims are preempted by federal labor law in cases involving "labor disputes." See Beverly Hills Foodland, Inc., 39 F.3d at 194. "[D]uring labor disputes, state defamation actions are partially preempted, with plaintiffs required to meet an actual malice standard similar to that announced in [New York Times Co. v. Sullivan]." Id. In other words, in Beverly Hills Foodland, Inc., the plaintiff was required to prove actual malice to prevail on its defamation claim, not because of its status as a public official or public figure, but because of the "federal labor policy protecting freedom of speech." Id. The Eighth Circuit then extended this partial preemption to tortious interference claims, stating that it would be illogical to allow the plaintiff to avoid proving actual malice when its tortious interference claim was based upon the same

It may be that the plaintiff's tortious interference claim is based upon the same "conduct or statements" alleged in her defamation claim. If that proves to be true, I might be inclined to agree with the defendants' argument that the tortious interference claim must satisfy the <u>New York Times</u> malice standard. At present, however, it is not clear that the plaintiff's tortious interference claim is based upon the same statements that her defamation claim depends upon. Instead, for example, the tortious interference claim may be based upon complaints made by the defendants to city officials about the "difficulties" that the plaintiff's work "caused to their operations." (<u>See</u> Compl., filing 1, ¶ 27.) Under the circumstances, I find that it would be premature to dismiss Count V on the theory that it is truly nothing more than a defamation claim.

In sum, Count I remains viable against Robinson–as he is sued in both his individual and official capacities–and against Kimball. Count II is dismissed in its entirety. Count III is dismissed insofar as it is based upon § 1985; however, the claim can proceed as a "joint action" conspiracy under § 1983. Count IV remains viable against Forward Kimball and Wolf, who did not move to dismiss the count. (<u>See</u> filing 45.) Otherwise, Count IV is dismissed in its entirety. Count V shall not be dismissed, although I note that Count V is not directed toward Defendants Robinson, Kimball, or Performax.

**IT IS ORDERED** that the defendants' motions to dismiss, filings 41, 45, 48, 50, 54, 55, and 70, are granted in part and denied in part as explained in the memorandum accompanying this order.

Dated August 14, 2006.

> BY THE COURT
>
> s/ Warren K. Urbom
> United States Senior District Judge

---

"conduct or statements" as its defamation claim. <u>Id.</u> at 196 & n.8. The Eighth Circuit's reasoning would seem to apply in cases where tortious interference claims are brought by "public officials" who are required to meet the <u>New York Times</u> malice standard to prove defamation.